Please step forward and identify yourselves, whoever is arguing. Good morning, Your Honor. My name is Daniel Konicek. I'm arguing on behalf of the appellant, Margaret Scarpelli. Good morning, Your Honors. I'm Steve Novak, and I'll be arguing on behalf of Defendant McDermott, Will, and Emery, which is one of the two defendants in the case, but the only defendant involved in this appeal. Right. David Mason, on behalf of the defendant, Margaret Scarpelli. Mr. Konicek, on behalf of the defendant. Richard Douglass, on behalf of the defendant, Will, and Emery. All right. You know, the time limit's 15-15. We have two cases. We're somewhat liberal. So unless we have 5,000 questions, we'll let you go until I interrupt you. Okay. Thank you very much for your time. Yeah. And I didn't get your last name again. Konicek, K-O-N-I-C-E-K. That's right. That's for recording, not amplification, so for those of us with issues. All right. May it please the Court? You may. Thank you. Counsel? Counsel? We're here on an interesting case, and Judge Lavin, it really rises out of the O'Callaghan case, and I think the trial court in this case relied principally upon the O'Callaghan case and language that you used in the O'Callaghan case. But by way of little background, because I think it's important for purposes of the argument, Peggy Scarpelli is alleged in the complaint, Second Amendment complaint, count three case called Intrusion Upon Seclusion. The Illinois Supreme Court in the Lawler case recognized it, and the Lawler case really remarkably parallels this case in the documents that were taken that the Supreme Court said would be really personal to a person, including personal bank accounts, medical records, financial statements, and in this case it went beyond that. Peggy Scarpelli and her husband owned a number of properties out in Kane County, where I'm from, and the defendants in this case were able to acquire all of these documents, including deeds to the property that this couple owned. So as I... Those are public records. They would be, Your Honor, and that was also discussed in Lawler, is that some of it might be public, but the manner in which it was acquired, the court was critical of and said, based on that, it met the requirements for intrusion upon seclusion. Some of those properties were also held in trust, Your Honor, so the information regarding the ownership would be not public. So I think in this instance, when you compare this case to the Lawler case, that the pleading requirements, certainly under a 2615, have been met, and I know that's an issue that has been raised, although not addressed by the trial court in the underlying case. In the argument before the judge, she relied, and it was a 2615, and I recognize, based on the O'Callaghan case, it's inappropriate because you can determine on the face of the complaint whether the affirmative defense is on that. So I recognize that 2615 is an appropriate vehicle, but it still appears before this court de novo. So you decide the issue as a matter of law, whether or not the privilege should apply in these circumstances, and that's what we're here about. In the trial court, I think the court that ---- What distinguishes this case from O'Callaghan and the litany of other cases that are mentioned in that opinion? Here's the main difference. In the O'Callaghan case, the conduct of the attorneys was done, as you pointed out in the opinion, Judge, in the underlying litigation. So in the underlying litigation, the conduct that the cop confirmed it and Ms. Savidly allegedly did, all was done while under the scrutiny of a judge. And you pointed out in your opinion towards the end that the O'Callaghans, contrary to their argument, were not left without a remedy, that if there was misconduct that occurred in the underlying litigation, that there was a remedy under 296. It doesn't mean that everybody should always have a remedy for some slight, whether imagined or real. I think the law does allow a remedy. And I think in this instance, and I think based on the O'Callaghan opinion, you pointed out that they did have a remedy and that somebody should be entitled to a remedy. Here, under the facts of this case, Margaret Scarpelli will never have a remedy for the conduct if the O'Callaghan case is applied to these facts. Do you know they have a remedy against the other party? They do, and, Your Honor, they do. So they are pursuing a claim against. Which is still alive. And it is still alive. But the distinction here, I think, is that Margaret Scarpelli is entitled to choose her defendant also. There's issues of other defenses that the client, in this case, Ms. Poinselet may have. She can certainly say, I relied on the advice of counsel, and that would be a defense. Whereas in this case, McDermott wouldn't have the same defense. If this Court rules as a matter of law that the absolute immunity should not apply in these circumstances, I frankly have a better case against McDermott for a number of reasons, including that. That defense would not be available in the underlying case. Also, as it relates to collectability, certainly going against an individual, Ms. Poinselet, is a lot different than going against the law firm. And we should be able to elect our remedy and choose our path. And that was the path we chose. I think in the argument before the trial court, is the issue of pertinency became a word. And I wanted to, and I tried to address with the trial court, that's not what we're here about. Certainly anybody could argue that what McDermott did pre-litigation by attaching these personal items is related to some future litigation. But the immunity itself is qualified, and all the courts, Judge Labin, that have construed it, and you asked me about it, have all started with the premise is that it's a narrow, the immunity is narrow and should be applied narrowly. On the other hand, the pertinency, whether it arises out of the limit. It's not strictly applied. Exactly. And I think, Judge, that's where the trial court got mixed up because you relied on the O'Callaghan opinion where you stated that pertinency. Thomas Hoppo and Atkinson and Johnson. Same thing. In all those cases, that was an issue of pertinency and whether or not it arose out of the litigation. No case, including the Callaghan, has decided the issue that's before this court. And frankly, under the public policy, which I think is our best argument, is do we want lawyers doing what was done here and then saying we're protected by the shield of immunity. I gave the example in my oral argument, and I know we go down the slippery slope but I think it's an important one here because what if this law firm knew about a bank account or another law firm knows about a bank account, the pre-suit they attach and take the money out of the bank account. The law in this State has never allowed that except in various cases. I agree, but it's sort of the parade of horribles argument. It is, and I acknowledge that, but I think that's where it leads us because the law does under that section in very limited circumstances, they allow a court under 735 ILCS 54101 to attach pre-judgment. It's one of the only exceptions to attaching pre-judgment. And the difference there is it's a court process, so it's done orderly. This state has never recognized self-help. And I know it's the parade of horribles, but where do we begin? And in this case, I think getting a hold of somebody's medical records, bank accounts, personal information, I think we're there. I think we're on the precipice of the horribles in this case. Great idea if you want to help Ms. Poinsolet and make sure you've attached all the property. Bad idea if they got the wrong person, and we do have a defense to the underlying case. And Ms. Scarpelli, in this instance, has not only had her privacy invaded, but she's been deprived of her assets. So I think in this instance, the O'Callaghan case can be explained. What about Doe and Don? Same in those cases. I think that was where it did not involve, number one, leaving a person without a remedy, and number two, those were all related to communications, which 586 originally applied to. 586 in O'Callaghan was the first time a court in this state has ever applied it to the litigation context in what occurred in O'Callaghan, understandably so, recognizing that that's the difference between what an attorney does in the course of litigation versus communication. So I think in all the cases where the court decided whether or not 586 should apply, they, one, decided should we apply the immunity under the circumstances based on public policy, and then second, is it pertinent, was the communication pertinent to the continuation of the litigation or the representation of the client? And that's why I think those cases, in particular, really don't apply to these set of facts, because, again, I have no doubt that we can find pertinency, but the question is, should we narrowly construe the immunity? The cases you've relied on are all before 1980. None of them are after O'Callaghan. None of them are after both. None of them are after King or Doe or Don. So you have no cases that are current. No, the cases that ‑‑ I looked at all five cases you cited. Those are all old cases, and they're all distinguishable. They are, and, Judge, the purposes, the purpose for which we cited the case was to establish that the limitation on the absolute immunity has always existed in the way it's been applied. I'll submit the only factual similar case that anybody's going to find is the O'Callaghan case, except the one striking and remarkable difference is everything that occurred in our case occurred pre-suit. Occurred pre-suit, and it's something that would not be allowed otherwise under Illinois law. The pre-judgment taking, the pre-litigation taking of somebody's property, you've got to compare the tort of intrusion upon seclusion, and then you've got to compare the immunity, and which are you going to favor? And I think in this instance, it should be the tort of intrusion upon seclusion. Anything else? Can I reserve time here? Sure. I'm going to refer to the plaintiffs in this appeal as the Scarpellies, because there's also a plaintiff in the related case, so to avoid confusion, I'll call them by name, meaning no disrespect to them. And, Your Honors, the discussion on the privilege really begins in this case with the fact that there are three principles that are not in any case in the case of the Scarpellies. The first principle is that the privilege applies to both communications and conduct. That was the recent hold that we had at O'Callaghan. Second, the privilege applies to communications both before and after the filing of the litigation. And third, the privilege applies to conduct after the litigation. Those three principles are undisputed. And what we're hearing today, and what we saw in the brief, was a request that somehow the privilege doesn't apply to attorney conduct before a litigation, in a sense trying to carve an exception out from O'Callaghan's holding that conduct is covered. And that argument fails for either one of two reasons. First, it was forfeited. In the circuit court, in the argument, counsel had said, I am not arguing that privilege does not apply to pre-litigation conduct. That's a forfeiture in this court. But aside from forfeiture, the argument that the privilege applies to both pre- and post-communications, but only post-litigation conduct, frankly, is a made-up argument. There's no logic behind the alleged distinction. There's no neutral principle that would support it. And consistent therewith, there's no case that says it. To the contrary, and we have not, there hasn't been a case that's addressed directly in fact scenario pre-litigation conduct. But the numerous cases that have applied the privilege in every other context does not state or even suggest this distinction that you're being asked to make here. First, the courts repeatedly say it applies before, during, and after litigation. Nothing says there's an exception for pre-litigation conduct. Second, it's beyond doubt that it covers conduct. We've said that. Nothing suggests that pre-litigation conduct is different. And to the contrary, Your Honor, the rationale given for applying the privilege to conduct dictates that that applies equally to pre-litigation conduct, post-litigation conduct. And to prove that, we need go no further than this Court's O'Callaghan decision. Here's what the Court said in finding that conduct is covered. Limiting the privilege to communications, as opposed to conduct, would undermine the policies behind the privilege. And in discussing the policies, the Court then says, in determining whether privilege should apply, we've also considered where a limitation on the privilege's application would frustrate an attorney's ability to settle. This is the key point. To settle or resolve cases without resorting to litigation, as many disputes are best resolved out of court. So the strong public policy of fostering pre-litigation settlement is a very key aspect of the principle that conduct is covered by the privilege. And that necessarily anticipates pre-litigation conduct, because if the idea is to try to settle before litigation, that conduct, of course, occurs before litigation. And that's particularly true here, where, notwithstanding the counsel has tried to say that McDermott did here, McDermott hasn't been accused of taking anything. McDermott is accused at most, reading that complaint, of utilizing, reviewing information that he obtained from someone. There's an admission at page 18 of their briefs, a very significant admission, that says they still, meaning as of the time of writing that brief, September of last year, don't know how McDermott got the information. And they don't know who, if anyone, they shared the information with. The complaint here is that McDermott reviewed information. That's what lawyers do. That's our job. We review information. We analyze it. We collate it. We search-train it. And not only is that a legitimate activity by a lawyer, and one that should be covered by the privilege, we're required to review information before filing a suit to make sure that we're filing a legitimate suit. The only limitation that this Court has put on the privilege is pertinency. And we've heard it again here today. They concede pertinency. So pertinency is out of the case. And knowing that it's out of the case, what the plaintiffs have done here, the strippers have done, have stretched to find rarity in some of the cases, and as Presiding Justice said, predating the more recent cases, that said the privilege is narrow. Each of the cases they rely on for that point was making the point in the context of defamation that was addressed to non-parties to the litigation. And they said, well, we're not going to let the privilege apply. If you go outside, we'll dispute to somebody that's a stranger to the suit. In the August case, it was a newspaper reporter. In the Gordon case, it was a non-party spouse. In the Thompson case, it was the ex-wife's new husband, not a party. In the Krasava case, it was a number of members of the Polish community, none of which was a party. That's who the wrongdoing was directed at, and the privilege logically didn't apply. And that's what was meant by narrow. The only other case where they say it said narrow, it really didn't, was the Z-Bev case. And in that case, all the court was saying was the attorney litigation privilege doesn't belong to the client. The client was trying to assert, so of course it didn't apply, and the court said, well, we're not going to stretch it there because it doesn't belong. And, in fact, in O'Callaghan, the court found that everything the lawyers did there was related to the litigation. And so this court, in an opinion that spent pages and paragraph after paragraph going through the history of this privilege, pronouncing all and repeating all the relevant legal principles, this court did not say that the privilege was narrow, and it didn't have to because everybody involved in that case was related to the litigation, so the court rationally focused a little on pertinency, which is the same thing here, because everything the spark publics complain about, everything, is what they say happened to narrow. And narrow, they were the proposed target defendants, and they became the actual defendants. Now, relatively in the briefs, the argument was that there was a ten-month period between that first meeting, where the claim of information was used, and the filing of the lawsuit, and that somehow that renders the privilege inapplicable. But the ten-month period is easily explained by the spark public's own complaints. As they say, in that meeting, they were handed a draft complaint, a complaint that they were told was ready to be filed in Kane County, that a clerk was ready to file if they couldn't resolve the issues at this meeting. And sure enough, that case was filed. And at that very meeting, a tolling agreement was signed. A tolling agreement's purpose is to hold up litigation, and both parties agreed to that. It wasn't unilateral. Both parties agreed to hold it up, allow for an investigation, more thorough investigation, and allow for the opportunity to settle. Settlement, which is that policy that so importantly underscores the privilege. The final argument that was made in the briefs, and I think the lead argument that we've heard here this morning, is that because the conduct did not occur after the litigation was filed, there's no recourse or remedy so that the privilege should not apply. For starters, and again, and I'm sorry to keep saying that arguments were forfeited, but what am I supposed to do when they're forfeited? I have to say it. And here, from the oral argument, the quote is, and this is in A20 of the appendix, counsel from McDermott also said that we argued that the privilege doesn't relate to conduct outside the justice system. Not so. Disavowed the argument. Judge Gandolf was entitled to say, okay, you're not making that argument, then I'm not going to consider it. It's been forfeited. The argument also fails on the merits. For starters, here's an obvious fact. We do have an attorney litigation privilege. It is said to be absolute. One of the consequences of that, which the courts for decades have decided is in the public interest, supports public policy, what happens when there's a privilege like this? Somebody loses recourse. That's just the other side of the coin. Privilege means privilege for liability. So the tort victim, of course, doesn't have recourse. That's the definition of a privilege. And to that point, there's absolutely no distinction, no distinction whatsoever between pre-litigation communications, which, again, the Scarpelli's concede is subject to the privilege, and pre-litigation conduct. After all, judges, the pre-litigation defamation victim loses the right to recover and the accompanying right to a trial by jury against the attorney who committed the defamation. That's a given. And that's just the same thing that we're heard shouldn't happen with respect to pre-litigation conduct. Why? The same thing happens. The plaintiff, the tort victim, loses the right to recovery. There's no distinction, no valid distinction between pre-litigation communications, which is conceded to be within the privilege, and pre-litigation conduct. And, in fact, the Pop case, and Resounding Justice Smith referred to it, in that case the privilege was applied even though there never was any litigation. What happened there is a lawyer was contacted to represent a proposed litigant, and the lawyer said, I'm not going to represent you because to advance your case, you're going to have to put on a witness who I believe is a liar, because in another case I had, he lied. So he declined to take the case. There's not a word in that opinion that somebody else filed it. There's no litigation. And certainly the attorney accused of the defamation wasn't a record in that litigation. So there was no one to issue sanctions against him. He was not subject to any court proceeding or sanctions. And, nevertheless, the appellate court applied the privilege, and that alleged defamation victim lost the right to recover against that lawyer. And if there could be any doubt, I think the O'Callaghan decision, which, as I said, repeated a lot of the principles. This court stated, no liability will attach, even at the expense of uncompensated, I'm going to underline that word, uncompensated harm. That's what I'm saying. If you've got a privilege on this side of the coin, you've got uncompensated harm on that side of the coin. It comes with the territory. Now, O'Callaghan also pointed to two factors that offset the state of not being able to pursue a tort claim. Each of those is relevant here. First, the court said that the attorney conduct is not unchecked, it's not unbridled, because the pertinency requirement places limits on attorney conduct. Second, the court said remedies were available in situations where the misconduct occurs in connection with, not in the court proceeding, in connection with the court proceeding, where the court can award sanctions. Here, even if that was a legitimate argument, I don't think it is, because McDermott's client, Ann Marie, in the related case, ultimately filed her suit, and McDermott is the counsel of record in that suit, the trial court could still provide any necessary remedy. If there really was a wrong here, and, of course, we said there was no wrong here, there can be a remedy. I'll give an example, and I don't know if this would or wouldn't happen, but this is certainly theoretically possible, and that is that the court in Ann Marie's case could decide to exclude evidence if it found that evidence was somehow wrongly obtained. You know, there's your remedy. And, in fact, in O'Callaghan, I hate to keep coming back to that case, Your Honor, but it's so relevant and so on point. In that case, some of the complaint of conduct was that the attorneys directed the remediation of certain problems on real property. It wasn't in the court proceeding. It was not done pursuant to court order. It wasn't done pursuant to court process. The lawyer thought it was a good idea in a lawsuit that's alleging wrongdoing in this remediation. Well, let's go out and do it again. And, allegedly, they did it wrong. They did it worse. And they asserted the privilege so they'd be free of that liability, strict liability in tort. And the court said they were free of that liability, not because that was done pursuant to court order or process or in the case as one of the elements of the case, but because it related to the remediation. And the same is true here, because McDermott's use of the Scarpelli's information, as alleged, is clearly related to the proposed, and then we actually later filed mediation. And in all events, I'm going to repeat at least a suggestion from a question from the bench, the Scarpelli's are suing McDermott's client. And they're suing for the identical intrusion upon seclusion claim and seeking the same alleged damages. So if there is a wrong here, and I'm sure they're going to argue, responding as superior, that she as a principal's response before the agent did. It can be completely remedied if there's a legitimate case, which we say there isn't. Thank you. I was going to turn briefly to the alternative argument. That's fine. He's trying to press your mute button. Yeah. I don't want to. I don't need his ego to grow anymore by repeating O'Callaghan. I was not going to repeat O'Callaghan, but just say if it was one more sentence. The argument you heard here today about Lawler and the private information there being the same as the private information here, none of that is in the briefs. The opening and reply brief ignored our argument that they haven't alleged the proper elements of seclusion, intrusion upon seclusion. They didn't brief it. They really can't argue it here today. I'm familiar with Lawler as well. That was mine in the appellate court. Okay. And I know that. Thank you, Your Honor. All right. Glaringly missing for the 15 minutes he spoke in all of his arguments, the one thing he did not address is the public policy. He didn't address it. Words didn't come out of his mouth. He did not address the public policy because they can't. Well, doesn't his suggestion that there hypothetically exists a remedy and you're still, you know, proceeding in the trial court? Again, I think the hypothetical, you know, he said we could have a remedy. I'm assuming he's referring to we get a jury instruction that the court gives us a 501 based on a case against Anne Marie Poinselet. My argument is the correct one in that regard. She has a right to say I relied on counsel. It's not a respondeat superior argument with all due respect. It's Anne Marie Poinselet says counsel told me to do it. She gets a defense, and if the jury concludes she relies on counsel, our cause of action is gone. So in that circumstance, there is no remedy. It's illusory. And if that's the only one he can come up with, I would suggest because there aren't any as it relates to McDermott Will. But the public policy is one we can't shy from. And Judge Smith, it goes back to your question to me is why we cited those cases. Justice Lavin, your statement in this O'Callaghan case was the privilege is limited, however, to instances where the administration of justice and public service require immunity. And then you cite the first district case Kosoga. And there the court was very clear in the case that you cited. The privilege does not cover situations under the public policy argument for which there are no safeguards against abuse. There are no safeguards against the abuse that occurred here unless this court concludes that the intrusion upon seclusion is an appropriate remedy against this law firm for the condo. It's not about pre, post, and all that. It's about whether or not the privilege is going to be construed narrowly or broadly. The court goes on in this Kosoga case. An absolute privilege is allowed only in situations in which authorities have the power to discipline as well as strike from the records statements which exceed the bounds of permissible conduct. There was nobody here to govern what occurred except the whim of McDermott Will. They say, oh, we just opened. They just opened personal property of somebody. That's exactly what Mahler said is impermissible. And it got it from the guards there, a public place. And they said, no, you can't do it. You can't use the information. The Kosoga court goes on. Conversely, when the occasion given rise to a communication by a lawyer, and this is the pertinency argument that they're getting caught up on, that's not what we're arguing. We're saying at the beginning the public policy should prohibit the conduct here, and that's been lost in all of their arguments, and it was lost in the trial court. And that's what we're seeking to undo and remedy here before this court. Thank you. You both posed some arguments I had not been familiar with, so we'll be going back to the books a little on two issues here. But thank you very much. They were argued very well. Thank you. And first, I'll fill this ego in your mind.